**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   **06-CV-02261-WYD-MJW**

**JERRY V. RIGGINS**,

     Plaintiff,

v.

**CITY OF LOUISVILLE, LOUSIVILLE POLICE DEPARTMENT, BRUCE GOODMAN, JULIE BOYD AND WILLIAM A. SIMMONS**

     Defendant.

---

## AMENDED COMPLAINT AND JURY DEMAND

---

## <u>INTRODUCTION</u>

1.  This action is brought against Defendant City of Louisville, Louisville Police Department, Bruce Goodman, Julie Boyd and William A. Simmons (hereinafter collectively referred to as "Defendants"):

    a.  to remedy a violation of Plaintiff Jerry V. Riggins' statutory right to be free from employment discrimination in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* ("ADA").

    b.  to remedy violations of Plaintiff Jerry V. Riggins' constitutional right to due process as guaranteed under the Fourteenth Amendment of the United States Constitution as enforced through the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### <u>FACTS RELEVANT TO JURISDICTION AND VENUE</u>

2.  This action is filed pursuant to 42 U.S.C. § 12111, *et seq.*  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

3.   Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because the unlawful practices were committed within the State of Colorado.

4.   This Amended Complaint and Jury Demand is made prior to any answer or other responsive pleading being submitted by Defendant City of Louisville to the original Complaint.

## PARTIES

5.   Plaintiff Jerry V. Riggins ("Officer Riggins") was an employee of Defendant City of Louisville, Louisville Police Department, working in the position of Sergeant when he was discriminatorily terminated from his employment without being afforded his constitutional right to due process.  Officer Riggins is a citizen of the State of Colorado, who presently resides at the following address: 805 Osprey Court, Louisville, Boulder County, Colorado.

6.   Defendant City of Louisville, Louisville Police Department ("Defendant City"), is a municipality organized under the laws of the State of Colorado and is an "employer" as that term is defined under the ADA.  Defendant City is a "person" as that term is defined under 42 U.S.C. § 1983.  At all times relevant to this civil action, Defendant City was the employer of Officer Riggins.  Defendant City is located at 992 Via Appia, Louisville, Boulder County, Colorado.

7.   Defendant Bruce Goodman ("Defendant Goodman"), at all times relevant to this Complaint, was the Chief of Police for Defendant City, and Officer Riggins' supervisor.  Defendant Goodman directed the investigation leading to Officer Riggins' termination from employment.  Defendant Goodman made the decision to terminate Officer Riggins' employment.  Defendant Goodman is a "person" as that term is defined under 42 U.S.C. § 1983.  Defendant Goodman was acting under the color of law when he directed the investigation leading to Officer

Riggins' termination from employment. Defendant Goodman is located at 992 Via Appia, Louisville, Boulder County, Colorado.

8. Defendant Julie Boyd ("Defendant Boyd"), at all times relevant to this Complaint, was the Deputy City Manager for Defendant City. Defendant Boyd also served as Acting Director of Human Resources for Defendant City when Officer Riggins was terminated from employment. Defendant Boyd participated in the investigation leading to Officer Riggins' termination from employment. Defendant Boyd concurred with Defendant Goodman's decision to terminate Officer Riggins' employment. Defendant Boyd is a "person" as that term is defined under 42 U.S.C. § 1983. Defendant Boyd was acting under the color of law when she participated in the investigation leading to Officer Riggins employment, and when she upheld Officer Riggins' termination from employment. Defendant Boyd is located at 749 Main Street, Louisville, Boulder County, Colorado.

9. Defendant William A. Simmons ("Defendant Simmons"), at all times relevant to this Complaint, was the City Manager for Defendant City. Defendant Simmons either participated in or was kept informed about the investigation leading to Officer Riggins' termination from employment. Defendant Simmons was consulted by and concurred with Defendant Goodman's and Defendant Boyd's decision to terminate Officer Riggins' employment. Defendant Simmons is a "person" as that term is defined under 42 U.S.C. § 1983. Defendant Simmons was acting under the color of law when he terminated Officer Riggins' employment. Defendant Simmons is located at 749 Main Street, Louisville, Boulder County, Colorado.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. On Wednesday, August 9, 2006, the United States Department of Justice issued Officer Riggins a Notice of Right to Sue granting Officer Riggins 90 days by which to file this instant action. On Monday, August 14, 2006, Officer Riggins' former attorneys received the Notice of Right to Sue as indicated on the date stamp placed on the Notice of Right to Sue. The Notice of Right to Sue is attached as "Exhibit A" and is incorporated by reference.

## NATURE OF CASE

11. Officer Riggins alleges that Defendant City unlawfully and discriminatorily terminated him from his employment, for which he was otherwise qualified, because he was "disabled" as that term is defined under the ADA.

12. Officer Riggins further alleges that Defendants violated his constitutional right to due process as the decision-makers were biased officials who ensured that Officer Riggins would not be afforded a fair and impartial tribunal or hearing that would determine his employment status with Defendant City.

## FACTS

13. Officer Riggins began his employment with Defendant City on June 4, 1983. Throughout his employment Officer Riggins received annual job performance evaluations that rated him as performing no less than satisfactorily, and often rated him as performing more than satisfactorily. Officer Riggins further received numerous commendations from the public and from his employer. Officer Riggins worked his way up the ranks of the police department finally achieving the level of Sergeant.

14. On May 22, 2004, Officer Riggins and his wife were in Estes Park, Colorado. During their visit, Officer Riggins suffered a delusional episode during which he believed someone was

after him.  He further believed that his hotel room was bugged and that there was a computer

chip implanted in his head.  While in their hotel room, Officer Riggins had his service revolver

out and lying on a table.

15. Concerned about his behavior, Officer Riggins' wife called the Estes Park Police

Department.  Officers from the Estes Park Police Department were able to calm Officer Riggins

down and disarm him.  Officer Riggins was taken into custody and transported to Longmont

United Hospital and placed on a mental health hold.

16. Bruce Goodman, Police Chief for Defendant City, was contacted by the Estes Park Police

Department and informed about Officer Riggins' detainment and condition.  Defendant

Goodman also was provided Officer Riggins' service revolver.

17. On May 23, 2004, Defendant Goodman wrote a memo to Jane Turk, who, at the time,

was Defendant City's Human Resources Director, advising her that Officer Riggins was being

placed on medical leave for an indeterminate length of time for non-work related medical

reasons.  Defendant Goodman had placed Officer Riggins on administrative leave, which

relieved him of all duties, responsibilities and authorities of his position as a Louisville Police

Officer.  Defendant Goodman further stated that Officer Riggins' administrative leave would be

in effect "until he is deemed competent to recommence his position, and at [Defendant

Goodman's] direction.  The May 23, 2004 memorandum was copied to William A. Simmons,

City Manager for Defendant City.

18. On May 26, 2004, Defendant Goodman sent a letter to Officer Riggins informing him

that he was being placed on administrative suspension with pay effective May 22, 2004.

Defendant Goodman advised Officer Riggins that he was relieved of all authority, duties and

responsibilities as a Louisville Police Officer; his right to carry a concealed weapon pursuant to state statute had been revoked; his access to City officers was restricted to business hours and must be approved by a supervisor; his police badge, ID card, radio, pager and all keys would be returned to the Department; and during normal business hours, he was required to present himself to the Police Chief or Police Commander.

19. Accordingly, from May 22, 2004, Officer Riggins remained on medical leave, sought and received treatment.

20. On August 23, 2004, Defendant Goodman sent an e-mail to Ms. Turk, Defendants Boyd and Simmons and others regarding Officer Riggins' leave status.  He asserted that if Officer Riggins' doctor asked to extend Officer Riggins' FMLA leave, Defendant City's position "should be that he has used all of his FMLA allowance, but that he may use his PLB and EIB until it runs out.  I suggest that we do not commit to any specific dates.  The police department's position will be [sic] may continue on leave while he has the accumulated time.  Based upon what we know, we do not authorize extending his leave to unpaid status."

21. On August 27, 2004, Defendant Goodman sent a second e-mail to Defendants Boyd and Simmons and others regarding Officer Riggins' doctor's intent to extend Officer Riggins' leave.

22. On September 8, 2004, Defendant Goodman submitted another memorandum to Ms. Turk discussing the pending return of Officer Riggins.  This memorandum was copied to Defendant Boyd.  In the memorandum, Defendant Goodman requested from Department City's human resources department that they contact Officer Riggins to determine his intention on returning to work, and to "chart a course of action."  Defendant Goodman recounted that Dr. Richard Wihera, the department's employment psychologist, advised that the "City's actions

must conform to ADA and HIPPA regulations." Defendant Goodman stated that Dr. Wihera's advice was "in-line with federal law."

23. Defendant Goodman informed Ms. Turk that Officer Riggins must: (1) determine the firm date that Officer Riggins' paid leave time would be exhausted and communicate that date to Officer Riggins; (2) ask Officer Riggins his intention to return to work, retire, resign or other; (3) if Officer Riggins intended to return to work, his physician must provide "adequate documentation" to show that he is fit to return to full duty as a police sergeant; (4) the City should ask that the physician describe his/her expertise in dealing with the particular disorder as it specifically relates to police officers; (5) ADA does not permit the employer to automatically require the employee to obtain a second medical opinion if the doctor has expertise with the medical condition as it relates to the employment group.  If the doctor has expertise, the City may be bound by the doctor's conclusions.  However, the City may require a second opinion if the doctor does not have expertise with police officers and cannot definitely conclude that the employee is fit for return to full duty; (6) written correspondence to Officer Riggins should include the police department's essential job functions policy, which should be provided to his doctor; (7) if Officer Riggins' doctor does not recommend return to full duty or does not provide "adequate documentation" the City is not required to allow him to return to work; and (8) if the doctor has the expertise with police officers and recommends his return to full duty, the City may have to allow his return.  Yet, if Officer Riggins returns to work and exhibits any unusual behavior, the City may immediately relieve him from duty and require him to obtain a fitness for duty report from the City's doctor.

24. On September 13, 2004, Ms. Turk sent a letter to Officer Riggins memorializing her conversation with Officer Riggins based on the framework laid out in Defendant Goodman's September 8, 2004 memorandum.

25. On September 27, 2004, Officer Riggins provided Defendant City a medical release to return to work from Dr. Joseph Horn. In the medical release Dr. Horn indicated that Officer Riggins appeared able to return to work as of the date of the release. Dr. Horn also supported a separate fitness for duty exam.

26. On September 29, 2004, Ms. Turk sent another letter to Officer Riggins, which stated that because Dr. Horn's medical release did "not show that [Officer Riggins was] fit to return to full duty as a police sergeant," he was required to submit to a fitness for duty examination with "a doctor designated by the City of Louisville." Officer Riggins was informed that because his paid leave had been exhausted, the time needed to further review his status and complete the fitness for duty examination would be unpaid leave. Ms. Turk indicated in her letter that "the City is further reviewing [Officer Riggins'] potential to return to work against the Department's requirements for officer conduct." Ms. Turk's letter was copied to Defendant Goodman and, upon information and belief, Defendants Boyd and Simmons were aware of the letter.

27. On October 5, 2004, Defendant Boyd sent a letter to Officer Riggins notifying him of his scheduled appointment with Dr. Wihera. Defendant Boyd notified Officer Riggins that he was "expected to fully cooperate in this examination and to authorize the attending practitioners to release all relevant information regarding [Officer Riggins'] ability to perform the duties of a full-duty police sergeant." A copy of Defendant Boyd's letter was sent to Defendant Goodman and Ms. Turk. It is unknown why Defendant Boyd sent this letter to Officer Riggins when Ms.

Turk was the human resources manager and previously had been sending correspondence to and communicating with Officer Riggins.

28. The doctor chosen by Defendant City to conduct Officer Riggins' fitness to duty examination was Dr. Wihera.  In <u>McKenzie v. Benton</u>, 388 F.3d 1342 (10th Cir.), the appellant court held that Dr. Wihera "had been properly allowed to testify as an expert in law enforcement qualification standards who has performed about 15,000 to 20,000 pre-employment evaluations concerning law enforcement personnel qualifications."

29. At some point in communications with Dr. Wihera, Defendant City submitted a list of 15 questions to Dr. Wihera regarding Officer Riggins' condition.  The list of questions included: (1) What is the cause of Jerry's condition; (2) when did it start and how; (3) what triggered his episode in Estes Park; (4) what are the meds that he is taking? Could a surgeon, a pilot or any other similar professional perform their duties while taking such medication; (5) what are their effects, how long does he have to keep taking them and what effects, if any, will manifest themselves at work; (6) his treatment likely to cause future absences or other medical problems; (7) how can we know if Jerry's state of mind is returning to its earlier state; (8) what might he have been doing before Estes Park that we could have seen or alerted to; (9) do Jerry's frequent episodes of forgetfulness have anything to do with this; (10) what kind of accommodations do we need to make for him; (11) what is Jerry's perception of this whole thing; (12) why no contact with most of us, ever, during his treatment; (13) what role does Joanie play in this? Is she willing or able to alert us to developing problems; (14) what does Jerry see as his future here; and (15) were the testing results affected by Jerry's meds?

30. On November 17, 2004, Dr. Wihera sent a letter to Dr. Horn requesting that: (1) Dr. Horn provide him a list of medications Officer Riggins was currently prescribed, what the primary effect of the medications are, and how long Dr. Horn anticipated Officer Riggins taking the medications; (2) what would be the effects on Officer Riggins behavior and mental status if he were to discontinue the use of the medications prematurely; (3) if the medications interfere in any way with Officer Riggins' ability to perform the essential job functions of his duties as a Police Officer; (4) if individuals in other critical positions (e.g. pilots, surgeons) would be allowed to continue working while using these medications; and (5) if Dr. Horn would be willing to contact the City if Officer Riggins "exhibits delusions or any other breakdowns in his contact with reality, or if he discontinues treatment against Dr. Horn's advice."

31. Dr. Wihera also sent a conclusion to Defendant Goodman on November 17, 2004, describing his interview with Officer Riggins.  In his letter, Dr. Wihera described that Officer Riggins was subjected to two individual interviews, the administration of a battery of psychological tests, a review of the documentation which was provided by Defendant City, a telephone contact with Ed Zebrowsky, Officer Riggins' therapist, and a telephone contact with Dr. Horn.  According to the interview results, Dr. Wihera indicated that there were no indications that Officer Riggins suffered from any type of thinking disorder.  Likewise, Dr. Wihera reported that there was no delusional content evident.  Dr. Wihera found no evidence of any significant anxiety.

32. With respect to the battery of tests, Dr. Wihera stated that "there are no indications of an emotional or psychological disorder that would interfere with his ability to perform the essential functions of his position."  Dr. Wihera found that Officer Riggins experienced a "Delusional

Disorder," but he did not see this as an issue with Officer Riggins. In his final analysis, Dr. Wihera asserted, "…it is my opinion that Mr. Riggins is psychologically fit to return to duty as an officer with the Louisville Police Department." In consideration of the public safety factors associated with Officer Riggins' position, Dr. Wihera recommended a "carefully planned program with close supervision in order to monitor and assess his abilities to function safely and effectively as an officer…"

33. Dr. Wihera recommended that: Officer Riggins be allowed to have meetings with co-workers to reestablish relationships with them; allow Officer Riggins to familiarize himself with new surroundings and procedures; allow Officer Riggins to ride along with another sergeant to become comfortable with the position and accustomed with the operations; department should remain alert to any indications that Mr. Riggins' moods or perceptions are changing; allow Officer Riggins to be an active participant in his return to work plan.

34. On November 21, 2004, Officer Riggins submitted a letter to Ms. Turk notifying her of Dr. Wihera's conclusion that he be allowed to return to work. Officer Riggins requested that he be provided retroactive pay and benefit status. He expressed his excitement about returning to work.

35. On December 2, 2004, Dr. Horn answered Dr. Wihera's November 17, 2004 letter by providing a list of medications Officer Riggins was taking. He also informed Dr. Wihera that he anticipated Officer Riggins being on the medications for at least another six months. Dr. Horn stated that if Officer Riggins was prematurely taken off the medication, he might risk a recurrence of his previous delusional symptoms. Dr. Horn advised that the potential side effects of the medications included fatigue and cognitive difficulties, yet, there was no evidence of the

side effects with Officer Riggins. While Dr. Horn acknowledged that pilots are not allowed to

fly while on psychotropic medications, physicians, he did not believe, would not be precluded

from being allowed to work as long as they were not manifesting adverse side effects. Dr. Horn

agreed that he would contact the department if Officer Riggins exhibited delusions or terminated

his treatment.

36. On December 3, 2004, Tom Bock, Police Commander, submitted a memorandum to

Defendant Goodman regarding "Jerry Riggins Memory Issues." Officer Bock indicated that

based on his conversation with Defendant Goodman, he documented "incidents concerning Jerry

Riggins since January of 2000." In his memorandum, Officer Bock listed 23 dates when Officer

Riggins supposedly forgot to do something or when he called in sick.

37. At no point in his employment with Defendant City had Officer Riggins ever been

subjected to such a review of his "memory issues." Defendant Goodman's request that Officer

Bock conduct a review of Officer Riggins' "memory issues" was predicated on Defendant

Goodman's belief or fear that Officer Riggins displayed symptoms of a delusional disorder in the

past.

38. Dissatisfied with Dr. Wihera's November 17, 2004 report and conclusion that Officer

Riggins was fit for duty, Defendant City hired another doctor to review the medical and non-

medical documentation collected as a result of Officer Riggins' May 22, 2004 delusional

episode. The second doctor hired by Defendant City was Dr. Richard VandenBergh. Although

it is believed that Dr. VandenBergh reviewed the medical and non-medical documentation

provided by Defendant City, he never personally interviewed or spoke with Officer Riggins, Dr.

Wihera, Dr. Horn or Mr. Zebrowsky.

39. On December 15, 2004, William Kingston, Police Commander, sent an e-mail to Defendant Goodman memorializing a conversation he and Sam Light, City Attorney, had with Dr. VandenBergh. Commander Kingston listed the medications Officer Riggins was taking, the purpose for the medications, the dosage amount, and potential side effects. He further advised Defendant Goodman that Dr. Vandenbergh believed that the City should "error on the side of caution." In particular, Commander Kingston indicated to Defendant Goodman that Dr. Vandenbergh was concerned about the "paranoid nature" of Officer Riggins' delusions. Also, Commander Kingston advised Defendant Goodman that Dr. VandenBergh was concerned that there was "no way to accurately predict the success of Jerry's treatment or alert us to the return of a delusional state."

40. On January 6, 2005, Dr. VandenBergh submitted his conclusions of the information provided to him. Dr. VandenBergh characterized his conclusions as "tentative." In his summary, Dr. VandenBergh stated the following:

> "…as you know there is currently in Denver much concern, after the recent two shooting by officers of the DPD, as to the mental stability of our police officers. But, even outside of such an environment, I would suspect as a psychiatrist that many citizens would be unhappy to think that one of their police sergeants was an officer *with a history of paranoid (persecutory) delusions*..." (Emphasis added).

41. Upon response to Defendant City's question about what caused Officer Riggins' delusional episode, Dr. Vandenbergh indicated because there did not appear to be any known preexisting factor or environmental trigger it was particularly difficult to say what might cause a similar second break.

42. Throughout his report to Defendant City, Dr. Vandenbergh fed Defendants fears about returning Officer Riggins to his position by making statements such as:

- "providers have no warning signs"

- "Does the fact that Sergeant Riggins chooses to remain in this line of work itself indicate that his thought processes are still not yet entirely normal or logical"

- "…since the recurrence of such a disorder can come on quickly and without warning, and the person could then become extremely dangerous.   In my medical/psychiatric opinion having a possibly recurrent paranoid delusional disorder should be considered another exceptional situation when that patient is a police officer who carries a gun, or has relatively easy access to guns"

- "The weakness in this alternative is that it is difficult to believe that even if Sergeant Riggins was in a desk job but still a member of the LPD, that he could not find someway to acquire a gun.  He would have regular access to firearms just by coming to work every day."

43. On January 26, 2005, Defendant City, in large part based on Dr. VandenBergh's conclusions, advised Officer Riggins that he was being terminated from his employment, effective February 7, 2005.   This advisement was written by Defendant Goodman.   Upon information and belief, Defendant Goodman consulted with Defendants Boyd and Simmons regarding his decision to terminate Officer Riggins.   In fact, in the January 26, 2005 letter, Defendant Goodman indicated that on January 11, 2005 he "recommended that action [termination], and on **January 20, 2005, the City Manager and Human Resources Officer approved your dismissal.**"

44. The reasons highlighted by Defendant Goodman for Officer Riggins' termination included: (1) Neither Dr. Horn nor Dr. Wihera provided an unconditional and unqualified fitness for duty release; (2) the adverse and/or unknown affects of the prescribed medications on Officer Riggins' ability to perform as a police officer; (3) Ed Zebrowsky's, LCSW, opinion is that Officer Riggins was fit for duty, but Defendant City believed he lacked the expertise to make such a judgment about police officers; (4) the Louisville Police Department was not able to create and administer "a carefully planned program with close supervision in order to monitor and assess his abilities to function safely and effectively as an officer with this agency"; and (5) None of the doctors knew what caused the delusional episode, or what may cause it to reoccur.

45. Officer Riggins' termination triggered Defendant City's appeal process. According to the appeals process, Defendant City assures a terminated employee that all appeals "will be resolved fairly and promptly." The Step 1 process allows the terminated city employee to present his/her appeal to the department director within five (5) working days from the date the official notification of the action was taken. If the appealing employee is unsuccessful in the Step 1 process, he/she can begin the Step 2 process by forwarding a written grievance to the Human Resources Officer. If the appealing employee is unsuccessful in the Step 2 process, he/she can begin the Step 3 process by submitting an appeal to the City Administrator. According to the City's rules, the decision of the City Administrator "will be final and binding on the parties, without further right to appeal."

46. In line with the Step 1 appeals process, on February 8, 2005, an appeal hearing was held concerning Officer Riggins' termination from employment. The city official conducting the appeal hearing was Defendant Goodman. On April 1, 2005, Defendant Goodman issued his

determination that his original recommendation regarding Officer Riggins' termination from employment would stand.

47. In line with the Step 2 appeals process, on April 6, 2005, Defendant Goodman's decision was appealed to Defendant Boyd, Deputy City Manager and now Acting Human Resources Manager.  On April 22, 2005, a hearing was held with Defendant Boyd presiding over the hearing.  During the hearing, Defendant Boyd assured Officer Riggins that she was able to and intended to perform and conduct the hearing in an impartial manner.  On April 29, 2005, Defendant Boyd issued her recommendation that Officer Riggins' termination from employment be upheld.  In her recommendation, Defendant Boyd indicated that Defendant Goodman, "based on conversations with some of the officers," was concerned about Officer Riggins' reintegration into the department and interaction with other officers.  Defendant Boyd further stated that her recommendation upholding Officer Riggins' termination was based on her "concern for public safety" and "is the overriding factor in [her] recommendation."  With respect to Officer Riggins' delusion episode, Defendant Boyd stated:

> "Jerry Riggins does not appear to have had a clear indication of the fact that he was experiencing mental and/or health issues prior to the incident in Estes Park, other than having had a problem with sleeplessness.  Although he remains under the care of a physician and psychotherapist, they do not seem to know what triggered the delusional episode in the first place, and have not identified what might trigger it again.  We also have no assurances that Mr. Riggins will continue the recommended therapy, and that the mental health providers and/or City supervisory staff would be aware if he discontinued it.

48.  Although Defendant Boyd attempts to cover her tracks by disavowing that she believes Officer Riggins suffers from a disability or that she perceives Officer Riggins as suffering from a disability, in her recommendation she stated that, "In fact, Officer Riggins is not fit for duty as a police sergeant for the Louisville Police Department due to occurrence of a serious off-duty

delusional episode." Defendant Boyd is not a medical doctor nor is she qualified to make medical assessments or medical conclusions.

49. In line with the Step 3 appeals process, Defendant Boyd's recommendation was appealed to Defendant Simmons. On May 17, 2005, Defendant Simmons presided over the appeals hearing. Similar to Defendant Boyd's assurances, Defendant Simmons informed Officer Riggins that he was "able to and intend to perform this role and conduct this meeting in an impartial manner."

50. In a May 24, 2005 letter written by Mr. Simmons, he upheld Officer Riggins' termination from employment based on the reasons set forth in Ms. Boyd's April 29, 2005 recommendation and Defendant Goodman's January 26, 2005 letter. Mr. Simmons indicated that while "the City is sympathetic to [Officer Riggins'] situation, the City must base its decisions first and foremost on consideration of the public safety and welfare."

51. The actions, conduct and statements of Defendant City's employees demonstrate that they regarded Officer Riggins as having a disability. In numerous documents, City officials and employees continuously refer to their concern that Officer Riggins might have a recurrence of his delusional episode. None of the medical or non-medical documents support any evidence that Officer Riggins might or will experience another delusional episode. Nonetheless, Defendant City based its decision to terminate Officer Riggins' employment as a result of myths, fears and stereotypes concerning Officer Riggins' one delusional episode.

52. None of the medical or non-medical documentation supports that Officer Riggins posed a direct threat to the welfare and safety of the public.

53. The actions, conduct and statements of Defendants Goodman, Boyd and Simmons demonstrate that they failed to provide Officer Riggins a fair and impartial hearing regarding his termination from employment. All three individual Defendants participated in, consulted with each other and decided to terminate Officer Riggins employment prior to Defendant Goodman's January 26, 2005 letter notifying Officer Riggins that he was being terminated from employment.

### FIRST CAUSE OF ACTION
**(Violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*.)**

54. Officer Riggins repeats and realleges each and every allegation in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55. Officer Riggins is disabled within the meaning of the Americans with Disabilities Act as Defendant City regarded him as being disabled.

56. Officer Riggins is qualified to perform his position with or without reasonable accommodation;

57. Defendant City discriminated against Officer Riggins by terminating him from his position as a result of regarding him as disabled.

### SECOND CAUSE OF ACTION
**(Violation of Officer Riggins' Federal Constitutional Right to Due Process as Enforced Through 42 U.S.C. § 1983)**

58. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 57 of this complaint with the same force and effect as if fully set forth herein.

59. As a city employee, Officer Riggins had a protected property interest in continued city employment. Therefore, Officer Riggins could only be terminated from city employment in accordance with Defendant City's laws, rules, regulations and policies governing terminations.

60. Defendants were required to provide Officer Riggins a fair and impartial process and tribunal when terminating his employment.

61. All Defendants made up their minds to terminate Officer Riggins from employment prior to the January 26, 2005 letter notifying Officer Riggins of his termination from employment.

62. By their above overt acts, Defendants, acting under the color of law and aware of Officer Riggins' clearly established constitutional rights to due process, deprived Officer Riggins his right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution and enforced through 42 U.S.C. § 1983, when they failed to provide Officer Riggins a fair and impartial process and tribunal by which Officer Riggins could appeal his termination from employment.

63. Defendants' acts were willful, wanton and in reckless disregard of Officer Riggins' constitutional rights.

As a result of the aforesaid conduct of Defendant City, Officer Riggins has been injured.

WHEREFORE, Officer Riggins respectfully prays this Court to grant the following relief:

a) Award Officer Riggins actual damages, including, but not limited to back pay, reinstatement of position, benefits, and seniority pursuant to applicable statutes, including, without limitation, the ADA or the Civil Rights Act of 1991.

b) Award Officer Riggins compensatory and punitive damages against Defendant City pursuant to applicable statutes, including, without limitation, the ADA, the Civil Rights Act of 1991, and damages available under 42 U.S.C. § 1983.

c)  Award attorney fees and costs pursuant to applicable statutes, including, without

limitation, the ADA, the Civil Rights Act of 1991, and 42 U.S.C. § 1983, and to the

fullest extent permitted by law.

d)  An award for pre-judgment and post-judgment interest to the fullest extent permitted

by law.

e)  Grant Officer Riggins such other and further relief as to this Court appears necessary

and proper.

Respectfully submitted this 18th day of December, 2006.

/s/ Joseph A. Salazar
Joseph A. Salazar, Esq.
Address for Plaintiff:                              The Salazar Consultant Group, LLC
Jerry V. Riggins                                    3842 E. 127th Lane
805 Osprey Court                                    Thornton, Colorado 80241
Louisville, Colorado 80027                          (303) 452-5601 Office/Fax
                                                    E-mail: jsalazar03@law.du.edu
                                                    Atty. Reg. #35196
                                                    *Attorney for Plaintiff*

JURY DEMAND

Plaintiff requests a jury trial on all issues triable by jury.

/s/ Joseph A. Salazar
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on this **18**[th] day of December 2006, a true and complete copy of the foregoing **AMENDED COMPLAINT AND JURY DEMAND** was served via hand-delivery on the following:

Kevin Perez
1050 17th Street, Suite 2500
Denver, Colorado 80265
*Attorney for Defendant City of Louisville*

/s/ Joseph A. Salazar, Esq.      