IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-02261-WYD-MJW

JERRY V. RIGGINS,

    Plaintiff,

v.

CITY OF LOUISVILLE, LOUISVILLE POLICE DEPARTMENT, BRUCE GOODMAN, JULIE BOYD AND WILLIAM A. SIMMONS,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>

This case arises from Plaintiff's termination from employment as a police sergeant for the City of Louisville, Louisville Police Department. Plaintiff's employment was terminated effective February 7, 2005.

Plaintiff Riggins alleges that the City unlawfully and discriminatorily terminated him from his employment, for which he was otherwise qualified, as a result of regarding him as "disabled" as that meaning is defined under the Americans with Disabilities Act ["ADA"]. He further alleges that as a city employee, he had a protected property interest in continued employment and that he was denied due process in connection with his termination. The Amended Complaint alleges violations of Title I of the ADA, 42 U.S.C. § 12111, *et seq.* and a violation of Plaintiff's federal constitutional right to due process as asserted through 42 U.S.C. § 1983.

Cross motions for summary judgment were filed as to the due process claim under § 1983. Specifically, certain Defendants filed a Motion for Summary Judgment on Qualified Immunity on April 9, 2007, and Plaintiff filed a Cross-Motion for Partial Summary Judgment on August 12, 2007. For the reasons stated below, Defendants' Motion for Summary Judgment on Qualified Immunity is denied. Plaintiff's Cross-Motion for Partial Summary Judgment is also denied.

II.   FACTUAL BACKGROUND

Pertinent to Plaintiff's termination, the Complaint alleges that in May 2004 while in Estes Park, Colorado, Plaintiff suffered a delusional episode during which he believed someone was after him, that his hotel room was bugged, and that there was a computer chip implanted in his head. Plaintiff's wife called the Estes Park Police Department who took Plaintiff into custody and transported him to Longmont United Hospital where he was placed on a mental heath hold. Bruce Goodman, Police Chief for the City of Louisville ["Goodman"], was informed about this incident by the Estes Park Police Department.

Plaintiff was placed on administrative leave effective May 22, 2004, for an indeterminate length of time for non-work related medical reasons. While on such leave, Plaintiff was relieved of all duties, responsibilities and authorities of his position as a Louisville Police Officer. Pursuant to a May 23, 2004 memorandum from Goodman, the administrative leave would be in effect until Plaintiff "is deemed competent to recommence his position, and at [Defendant Goodman's] direction." This

memorandum was copied to William A. Simmons, City Manager ["Simmons"]. From May 22, 2004, Plaintiff remained on medical leave and sought and received treatment.

The treatment included treatment and/or evaluation by Richard Wihera, Psy.D., the Police Department's psychologist, Dr. Joseph Horn, Dr. Richard VandenBergh, and Ed Zebrowsky, LCSW. In November 2004, Dr. Wihera opined that Plaintiff was psychologically fit to return to duty as a police officer, subject to Plaintiff's return being done "in a carefully planned program with close supervision in order to monitor and assess his abilities to function safely and effectively as an officer. . . ." (Ex. 19, p. 4, Pl.'s Cross Mot. for Summ. J.) On January 6, 2005, Dr. VandenBergh issued a report that questioned Plaintiff's fitness to return to work.

On January 11, 2005, Goodman submitted a memorandum to Simmons and Jane Turk recommending Riggins' termination from employment. On or about January 20, 2005, Defendants Julie Boyd ["Boyd"] and Simmons approved Goodman's recommendation to terminate Plaintiff.

By letter dated January 26, 2005, the City, through Goodman, advised Plaintiff that he was being terminated from his employment, effective February 7, 2005. The letter stated that Goodman recommended his termination and that a department head may impose dismissal upon the approval of the Human Resources Officer and the City Manager. The letter also stated that Goodman recommended the termination on January 11, 2005, and that the Human Resources Officer and City Manager approved Plaintiff's termination on January 20, 2005. The letter advised that Plaintiff could

request a hearing in writing within five days of receipt of the letter and that, following the hearing, Goodman would make his final decision.

The letter provided a number of reasons for Plaintiff's termination. These included the following: (1) neither Dr. Horn nor Dr. Wihera provided an unconditional and unqualified fitness for duty release for Plaintiff; (2) the medication Plaintiff took for his paranoid delusions had adverse and/or unknown effects vis-a-vis his ability to perform as a police officer; (3) while Ed Zebrowsky, LCSW, opined that Plaintiff was fit for duty, the City believed he lacked the expertise to make such a judgment about police officers; (4) the Louisville Police Department was not able to create and administer the program suggested by Richard Wihera, Psy.D, for Plaintiff's return to duty; and (4) none of the treating or evaluating health care providers knew what caused Plaintiff's delusional episode or what may cause it to reoccur. (Ex. B, Defs.' Mot. for Summ. J.) Plaintiff disputes the legitimacy of these reasons. Among other things, he points out that an unconditional release for work was not required by policies of the City or police department, and Goodman did not require an unconditional release from Plaintiff prior to his January 26, 2005, termination letter.

The termination letter triggered the City's three-step appeal process. The first step allowed Plaintiff to present his appeal to the department director, Defendant Goodman. Plaintiff presented his appeal to Goodman on February 8, 2005, at which time Plaintiff was represented by counsel. On April 1, 2005, Goodman issued a determination that his original recommendation for termination would stand because he felt that neither Plaintiff nor counsel provided information that mitigated the base for

Goodman's initial decision, *i.e.,* Plaintiff did not provide an unconditional return to work release or other information sufficiently addressing the risk that Plaintiff's paranoid delusions would reoccur.

The second step of the City's appeal process was for Plaintiff to appeal Goodman's final decision to the Human Resources Director, Defendant Boyd. On April 22, 2005, Boyd held the step two hearing at which time Plaintiff was again represented by counsel. On April 29, 2005, Boyd issued her recommendation for termination to the City Manager pursuant to city policy.

The third step in the appeal process was for the City Manager, Defendant Simmons, to consult with Plaintiff. On May 17, 2005, Simmons held another appeal hearing at which time Plaintiff was again represented by counsel. On May 24, 2005, Simmons issued a letter terminating Plaintiff's employment as a police sergeant for the City of Louisville. Simmons reiterated in the letter that the City must base its decisions first and foremost on considerations of public safety and welfare.

Goodman, Boyd and Simmons assert that they were acting in their discretionary capacity during the appeal process, which Plaintiff denies. He asserts that these Defendants were not given such authority without following city procedures or affording him due process. Further, Goodman, Boyd and Simmons assert that they believed they remained fair, impartial and objective, and were open to reversing the termination recommendation if Plaintiff provided adequate information to address the risk that Plaintiff's paranoid delusions would reoccur. Plaintiff also disputes this, asserting that

Defendants had already made the termination decision and were not open to reversing it, thus depriving him of a fair and impartial appeal process.

However, it is undisputed that no issues of bias or lack of impartiality were raised by Plaintiff during the appeal process nor did Plaintiff request an alternative hearing officer. Plaintiff acknowledges this, but asserts that he did not have adequate information to object at that time because he had not been apprised of the fact that Goodman had previously secured the termination of Plaintiff with Boyd's and Simmons' concurrence. Had Plaintiff objected to Goodman, Boyd or Simmons presiding over the appeal hearings, they testified in their affidavits that they would have been open to recusing themselves, a fact which Plaintiff also disputes.

Plaintiff contends in that regard that the January 26, 2005 termination letter and prior memoranda and correspondence show that Goodman, Boyd and Simmons were not open to recusing themselves and having another City employee appointed. Further, the individual Defendants knew that they were the only three city officials to whom he could appeal. They also did they not alert Plaintiff to any other appeal process or procedure which Plaintiff could have elected had he disagreed with Goodman presiding over the appeal hearing.

Goodman and Boyd testified in their affidavits that they did not believe their actions in presiding over the appeal hearings at step one and two or coming to their conclusions violated Plaintiff's clearly established statutory or constitutional rights. (Exs. A and G, Mot. for Summ. J.) Goodman, Boyd and Simmons all testified in their affidavits that they acted sincerely and with a believe that their actions complied with

the law, that they did not act with malice, and that they did not have any impermissible motive in coming to their decisions. (Exs. A and J, Mot. for Summ. J.)

As grounds for bias, Plaintiff asserts that the January 11, 2005 memorandum shows that Goodman was intent on terminating Plaintiff's employment with the full support of the only other two city officials to whom Plaintiff could appeal his termination. In other words, he contends that Goodman, Boyd and Simmons secured the termination decision in early January without notice to Plaintiff and were not open to changing their minds during the appeal process. Further, Plaintiff contends that Defendants did not disclose Goodman's memoranda of January 11, 2005 and January 20, 2005 to Plaintiff during the appeal process or an e-mail of January 24, 2005 which included a draft termination letter. However, the Employee Handbook (Ex. C to Reply, pp. 7-6) provided notice that the department director may impose dismissal upon the prior approval of the Human Resources Officer and the City Administrator. Further, the letter of January 26, 2005, also referred to this procedure as well as the pertinent dates that decisions were made.

Plaintiff asserts that the final termination decision was made in the January 26, 2005 letter, and that he was not afforded notice of the charges leading to his termination, evidence supporting the charges, or an opportunity to respond to the charges prior to the termination letter as required by the City's disciplinary policy and due process. Defendants dispute this, asserting that the January 26, 2005 letter indicated that the City would terminate him on February 7, 2005 but that Plaintiff could request a hearing "prior to a final decision" and begin the three step Adverse Action

Appeal Process. Defendants contend that this is a clear statement of an intent to terminate Plaintiff, as well as an indication that termination would not take place without affording Plaintiff the right to appeal.

III. ANALYSIS

    A.    <u>Summary Judgment Standard</u>

    A.    <u>Summary Judgment Standard</u>

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

"When the parties file cross motions for summary judgment, '[the court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Cross motions for summary judgment must

be treated separately – the denial of one does not require the grant of another. *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

  B.  <u>Defendants' Motion for Summary Judgment on Qualified Immunity</u>

Defendants Goodman, Boyd and Simmons, the individual Defendants, move for summary judgment on the grounds of qualified immunity. Defendants City of Louisville and Louisville Police Department did not seek summary judgment through this motion. I also note that the summary judgment motion addresses only Plaintiff's second claim for relief under 42 U.S.C. § 1983 for violation of procedural due process rather than the first claim under the ADA which is asserted only against the City of Louisville.

Turning to the merits of the individual Defendants' summary judgment motion, the Supreme Court In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990). Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right at issue "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quotation omitted).

"[O]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "[T]he 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Snell v. Tunnell*, 920 F.2d 673, 696 (10th Cir. 1990) (quotation omitted). The burden is on the plaintiff to show that the law was clearly established at the time of the alleged violation. *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir. 1991). If the law is clearly established, the question becomes whether the defendant's conduct was objectively reasonable in light of the clearly established law. *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997).

Under the foregoing analysis, I first must address whether Plaintiff has presented facts or allegations sufficient to show that Defendants' actions violated a constitutional or statutory right. If he has made such a showing, I next must determine whether the right was clearly established at the time of Defendants' unlawful conduct. Construing the evidence in the light most favorable to Plaintiff for purposes of the qualified immunity analysis, I find that Plaintiff has shown that Defendants' actions violated a constitutional right of due process and that this right was clearly established at the time of Defendants' unlawful conduct.

More specifically, in order to prevail on a § 1983 claim, a plaintiff must establish that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right. *Montgomery v. City of Ardmore*, 365 F.3d

926, 936 (10th Cir. 2004). Here, it is undisputed that Defendants acted under color of law. The issue is whether Defendants' actions deprived the Plaintiff of a federal right.

Plaintiff asserts that Defendants violated his due process rights in connection with his termination from employment. Specifically, he asserts that he was denied due process claim prior to his termination and that he was deprived of a fair and impartial appeal. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* (emphasis in original) (quotation omitted).

The Tenth Circuit holds that in order to assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: "'(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'" *Montgomery*, 365 F.3d at 935 (quoting *Watson v. Univ. of Utah Med. Ctr.,* 75 F.3d 569, 577 (10th Cir.1996) (internal quotation marks omitted)). I find for purposes of the summary judgment motion that Plaintiff did possess a protected interest in his continued employment with the City and this has not been contested by Defendants. S*ee Lovingier v. City of Black Hawk*, No. 98-1133, 1999 WL 1029125, at *2 (10th Cir. 1999).

Thus, I must determine whether he was afforded an appropriate level of process. Construing the evidence in the light most favorable to Plaintiff, I find that Defendants violated this right through not providing Plaintiff pre-termination due process. Indeed, I find that there are genuine issues of material fact as to this issue which require that I deny both motions for summary judgment on this issue.[1]

"[T]he Due Process Clause requires 'some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.'" *Montgomery*, 365 F.3d at 935 (quoting *Loudermill,* 470 U.S. at 542). "The purpose of the pretermination hearing is to serve as 'a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Id.* (quoting *id.* at 545-46). "[A] pretermination hearing requires: (1) 'oral or written notice [to the employee] of the charges against him;' (2) 'an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story.'" *Id.* at 936 (quoting *id.* at 546); *see also Lovingier*, 1999 WL 102915, at *2 (pretermination hearing required except in emergency situation).

In the case at hand, I find that there are genuine issues of material fact as to whether Plaintiff had already been terminated when he received the January 26, 2005 letter and whether the hearing that was afforded Plaintiff was a pretermination hearing. The City policies provide that "[p]rior to any final action regarding dismissal, you will be given the opportunity to request a hearing before your department director" where the

---

[1] Plaintiff's motion for partial summary judgment is addressed below.

employee will have the opportunity to explain or rebut the information presented and to respond to the reasons for the proposed termination." (Ex. 15 at 7-6, Resp. to Mot. for Summ. J.)  If the decision to terminate is upheld, the procedures require written notice of that decision, which will contain the employee's right to appeal." *Id*.  The Policies then provide for an adverse action appeal process, which contains the three step program previously discussed.  *Id.* at 7-8.  The first step of the appeal process also requires a hearing before the Department Director, which must be requested within five (5) days of the termination decision.

There are genuine issues of material fact as to whether Defendants complied with these procedures and, specifically, whether Defendants gave Plaintiff a pretermination hearing as compared to a post-termination hearing under the three step appeal process.  Indeed, construing the evidence in the light most favorable to Plaintiff, the City's policies appear to require a hearing before the Department Director (in this case Defendant Goodman) both before the final decision to terminate and after the final decision to terminate (as step one of the appeal process).  There are also genuine issues of material fact as to whether the three step appeal process set forth in the City's polices applies pretermination or post-termination.

Construing the evidence in the light most favorable to Plaintiff as I must for purposes of the qualified immunity analysis, I find that the January 26, 2005, letter was a termination letter and that the hearing which was afforded Plaintiff was a hearing at step one of the appeal process, made after the decision to terminate Plaintiff.  Indeed, Defendant Goodman's January 26, 2005 letter gave Plaintiff five days to request a

hearing, which is consistent with step one of the three-step process. Thus, construing the evidence in the light most favorable to Plaintiff, I find that Plaintiff was denied his right to a pretermination hearing, and Defendants have not alleged an emergency that might have vitiated the need for such a hearing. Accordingly, I find that Plaintiff has shown for purposes of summary judgment that Defendants violated a clearly established right of Plaintiff by not affording him a pretermination hearing.

Since I find that the law is clearly established, the question becomes whether the Defendants' conduct was objectively reasonable in light of the clearly established law. *Breidenbach*, 126 F.3d at 1291. The Tenth Circuit has indicated that if the law is clearly established, the defense of qualified immunity "ordinarily should fail, since a reasonably competent public official should know the law concerning his conduct." *Lutz v. Weld County School Dist.*, 784 F.2d 340, 342 (10th Cir. 1986). The only exception to this is where the official pleading an immunity defense "'claims extraordinary circumstances and can prove that he neither knew nor of should have known of the relevant legal standard.'" *Street v. Parham*, 929 F.2d 537, 540 (10th Cir. 1991) (quoting *Harlow*, 457 U.S. at 819). In the case at hand, Defendants did not plead or allege any such extraordinary circumstances. Accordingly, I find that Defendants' conduct was not objectively reasonable in light of the clearly established law.

I also find that qualified immunity is not appropriate on the due process claim based on Plaintiff's assertion of bias in connection with the appeal process. Plaintiff alleges bias on the part of the three individual Defendants involved in the appeal process on the basis that they had made clear their intent to terminate Plaintiff prior to

the hearing. The Tenth Circuit holds that "the presence of even one biased member on a tribunal is sufficient to deprive a plaintiff of procedural due process." *McClure v. Independent School Dist. No. 16*, 228 F.3d 1205, 1216 n. 8 (10th Cir. 2000).

*McClure* indicated that bias may be shown by statements of officials of their intent to terminate an employee prior to the hearing at which termination is to be decided. *Id.*, 228 F.3d at 1261. *McClure* further stated, "a due process principle is bent too far when such persons are then called on to sit as fact finders and to make a decision affecting the property interests and liberty interests of one's reputation and standing in his profession.'" *Id.* (quotation omitted). Accordingly, the Tenth Circuit in *McClure* found that the statements attributed to the defendants raised a genuine issue of material fact as to whether they were biased when they sat on the tribunal which voted to terminate Mrs. McClure's employment. *Id.*

Finally and important to the qualified immunity analysis, the Tenth Circuit in *McClure* held that qualified immunity was not proper (and reversed the grant of summary judgment on that ground) where the defendants were alleged to have made such statements on the merits of the termination prior to the hearing. *Id.* at 1215-16. It found that the law was clearly established that statements such as those are evidence of a biased tribunal. *Id.* *McClure* further found that it was clearly established that a person who is biased in fact may not sit on a quasi-judicial tribunal. *Id.* at 1216.

Defendants argue, however, that prior knowledge of the facts is insufficient to disqualify a decision maker based on bias, citing *Hortonville Joint School Dist. No. 1 v. Hortonville Education Assoc.*, 426 U.S. 482, 493 (1976). In this case, however, the

-15-

prior knowledge of Defendants went well beyond the facts and also included statements of their intent to terminate Plaintiff. I note that the Supreme Court in *Hortonville* also stated that a decisionmaker "is not disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id*.

I find that there are genuine issues of material fact on this issue that preclude summary judgment based on qualified immunity. Construing the evidence in the light most favorable to Plaintiff, the individual Defendants made statements prior to the appeal process which could be construed as statements on the merits indicating their intent that Plaintiff be terminated. These prior statements could be construed as showing that they were not capable of judging this controversy fairly as they had already made up their minds and would not allow Plaintiff to return to work absent something not even required by their policies, an unconditional work release. Based on the foregoing, I find that Plaintiff has shown for purposes of summary judgment that Defendants may have violated a clearly established right of Plaintiff to have his appeal heard by persons who are not biased.[2]

Based on the foregoing, I find that Defendants' Motion for Summary Judgment on Qualified Immunity must be denied.

---

[2] While Defendants argue that Plaintiff waived the issue of bias by not objecting at the time of the hearing I find, construing the evidence in the light most favorable to Plaintiff, that he did not know all the facts for asserting a claim of bias at that time. This is a disputed issue. Thus, for purposes of summary judgment, I find that there was no waiver.

C. <u>Plaintiff's Cross-Motion for Partial Summary Judgment</u>

I also deny Plaintiff's Cross-Motion for Partial Summary Judgment. As noted in the previous section, I find that there are genuine issues of material fact as to whether Plaintiff had already been terminated when he received the January 26, 2005 letter and whether the hearing that was afforded Plaintiff was a pretermination hearing (as compared to a post-termination proceeding). I also find that there are genuine issues of material fact as to whether Defendants complied with the City policies regarding the process due its employees and whether the three-step appeal process set forth in the City's polices applies pretermination or post-termination. I also find that there are genuine issues of material fact as to whether the appeal was fair and impartial and whether the individual Defendants were biased.

Based on the foregoing, Plaintiff's Cross-Motion for Partial Summary Judgment is also denied. I also note that to the extent Defendants are arguing in response to Plaintiff's motion that the City and the Police Department cannot be held liable under 42 U.S.C. § 1983, this was not properly raised and has not been adequately briefed in connection with Plaintiff's motion. If these Defendants believe that dismissal is appropriate, they must file their own motion to dismiss or for summary judgment.

IV. <u>CONCLUSION</u>

In conclusion, it is

ORDERED that Defendants' Motion for Summary Judgment on Qualified Immunity (docket # 18) is **DENIED**. It is

FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment (docket # 50) is also **DENIED**.

Dated: January 25, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge